# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3063

_____

United States of America,

                 Appellee,

       v.

Larry Deshonus Buchanan,

                 Appellant.

\* Appeal from the United States
\* District Court for the
\* Northern District of Iowa.

_____

Submitted: January 12, 1999
Filed: February 16, 1999

_____

Before BOWMAN, Chief Judge, MURPHY, Circuit Judge, and ALSOP,[1] District
Judge.

_____

BOWMAN, Chief Judge.

Larry Deshonus Buchanan entered a conditional plea of guilty to one count of
possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1)
and (b)(1)(B) (1994), reserving the right to appeal the order of the District Court[2]

_____

[1]The Honorable Donald D. Alsop, United States District Judge for the District
of Minnesota, sitting by designation.

[2]The Honorable Michael J. Melloy, Chief Judge, United States District Court for
the Northern District of Iowa.

denying his motion to suppress evidence seized pursuant to a search warrant. We affirm the denial of his suppression motion.

On the evening of June 5, 1996, Officer Mark Meyer of the Waterloo Police Department received information that three individuals were selling crack cocaine out of a car in a parking lot at 302 Commercial Street in Waterloo, Iowa. At approximately 11:30 p.m. that night, officers dispatched to the parking lot observed four individuals--Anthony O'Neal, Shawn Washington, Nick Woodyard, and Patricia West--standing around a Ford automobile and discovered Maurice Washington asleep in the backseat of a nearby Buick automobile. Officers found a plastic bag containing crack cocaine on the ground under the Ford car's right rear panel where O'Neal alone was standing. After arresting O'Neal, officers also found a quantity of crack cocaine on his person. All five individuals were taken to the police station for questioning.

Officer Meyer and Officer Richard Knief interviewed O'Neal at the police station. O'Neal told the officers he had bought the crack cocaine from a man named "Bass." Shawn Washington, however, consistently told the police that O'Neal had bought the crack cocaine earlier that evening from Larry Buchanan. After the police informed O'Neal that Bass could not have been the drug source because Bass was in jail, O'Neal identified his supplier as Larry Baker or Larry Johnson. The police were convinced Washington was telling the truth and told O'Neal they thought he was lying. When confronted with the officers' belief that the drug source was Buchanan, O'Neal confirmed Buchanan was his source and later pointed out Buchanan's residence to the police.[3]

Officer Knief prepared an application, which included his sworn affidavit, for a warrant to search Buchanan's residence at 1023 West Mullan Avenue. The affidavit stated that, following the arrest of O'Neal for possession of crack cocaine with intent

_____

[3]The record reflects that O'Neal and Buchanan were cousins or at least believed they shared some familial relationship.

to deliver, the police received information from a confidential and reliable informant, later identified as Washington, that O'Neal had bought the crack cocaine from Buchanan at Buchanan's residence, which Washington described as being located in a row of brick townhouses on West Mullan Avenue.  The affidavit stated that O'Neal confirmed this information when the police confronted him with it and that O'Neal identified 1023 West Mullan Avenue, which is located in a row of brick townhouses, as Buchanan's residence.  Officer Knief explained in his affidavit that utility records indicated Schalisa Taylor paid the utility bills for 1023 West Mullan Avenue and that Waterloo Police Department records listed numerous domestic violence calls involving Schalisa Taylor and Larry Buchanan.

The application prepared by Officer Knief to obtain the search warrant included a preprinted form that calls for the officer simply to place a checkmark or an "x" in front of the applicable listed responses to indicate the basis for the officer's belief that the informant should be found reliable.  The officer swears to the accuracy of the checklist regarding the informant's reliability and the checklist becomes part of the officer's sworn affidavit.  In this case, Officer Knief indicated that

> The informant is a concerned citizen who has been known by the above
> officer for _1_ years and who:
> > Is a mature individual.
> > Is regularly employed.
> > Is a person of truthful reputation.
> > Has no motivation to falsify the information.
> > Has otherwise demonstrated truthfulness.
> The informant has supplied information in the past _1_ times.
> The informant's past information has led to the making of _1_ arrests.
> Past information from the informant has led to the discovery and seizure
> of stolen property, drugs, or other contraband.
> The informant has not given false information in the past.
> The information supplied by the informant in this investigation has been
> corroborated by law enforcement personnel.

An Iowa state judge signed the search warrant at 3:20 a.m. on June 6, 1996. When the search warrant was executed around 4:30 a.m. on June 6, 1996, officers found, among other things, approximately forty-two grams of crack cocaine.

After being indicted for possession with intent to distribute crack cocaine, Buchanan filed a motion to suppress the evidence seized from his residence.[4] Buchanan alleged that Officer Knief made false statements in his affidavit, and thus the search warrant was void under Franks v. Delaware, 438 U.S. 154 (1978). The Magistrate Judge[5] to whom the matter was referred held an evidentiary hearing on the motion pursuant to Franks. Upon thorough review of the facts and the relevant law, the Magistrate Judge found numerous misleading statements and omitted facts in Officer Knief's affidavit. Examining a rewritten affidavit submitted by the government, with misstatements excised and omitted facts added, the Magistrate Judge concluded the warrant was supported by probable cause and recommended the motion to suppress be denied. The District Court, having held a hearing on objections to the Magistrate Judge's report and recommendation, agreed with the Magistrate Judge's conclusion that the warrant was based on probable cause and, therefore, denied the motion to suppress the evidence seized pursuant to the search warrant. Buchanan subsequently entered a conditional plea of guilty to possession with intent to distribute 42.41 grams of crack cocaine, reserving the right to appeal the District Court's denial of his motion to suppress evidence. See Guilty Plea & Sentencing Tr. at 31-32. The District Court sentenced Buchanan to seventy-eight months of imprisonment, four years of supervised released, and a $100 special assessment. See id. at 38-40. Buchanan appeals the denial of his motion to suppress.

---

[4]Buchanan also moved to suppress statements he made to officers during the execution of the search warrant. The District Court granted the motion to suppress these statements and this part of the District Court's order has not been appealed.

[5]The Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa.

In reviewing the District Court's denial of the suppression motion, the function of this Court is to ensure that the evidence as a whole provides a substantial basis for finding probable cause for the issuance of the search warrant. See Massachusetts v. Upton, 466 U.S. 727, 728 (1984) (per curiam); United States v. Day, 949 F.2d 973, 977 (8th Cir. 1991). The District Court's findings of fact may be reviewed only for clear error. See United States v. Martinez, 78 F.3d 399, 401 (8th Cir. 1996); Day, 949 F.2d at 977. We review de novo the District Court's legal conclusion that the Fourth Amendment was not violated. See Martinez, 78 F.3d at 401.

To prevail on his Franks challenge to the search warrant, Buchanan must establish (1) that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) that, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." Franks, 438 U.S. at 155-56; see also United States v. Clapp, 46 F.3d 795, 799 (8th Cir. 1995). This same analysis applies to material omissions of facts. Buchanan must establish (1) that Officer Knief omitted facts "with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading," and (2) "that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995) (quoting United States v. Humphreys, 982 F.2d 254, 258 n.2 (8th Cir. 1992), cert. denied, 510 U.S. 814 (1993)); see also Clapp, 46 F.3d at 799. If the affidavit as so redacted and supplemented is not sufficient to establish probable cause, the warrant will be voided and the evidence gathered pursuant to it will be excluded. See Franks, 438 U.S. at 156.

The Magistrate Judge's findings of fact, which were adopted by the District Court, show that Officer Knief's affidavit contained numerous false or misleading statements and omitted relevant facts. Contrary to the affidavit's assertions, Officer Knief was not personally acquainted with the informant, later identified as Washington, prior to June 5-6, 1996, and the officer knew little about the informant's

employment or reputation. The statement that the informant was a concerned citizen was misleading because it implied Washington was disinterested in the events described in the affidavit. Similarly, it was misleading to state the informant lacked motivation to falsify information because the affidavit omitted the fact that Washington had been taken into custody and interrogated regarding the crack cocaine found on and near O'Neal in the parking lot. Officer Knief inappropriately suggested that Washington had supplied information on a prior occasion by categorizing the "past" information as regarding O'Neal and the "present" information as regarding Buchanan, when the information about O'Neal and Buchanan was all part of a singular event. The affidavit also omitted that O'Neal initially had identified two or three other persons as the source of the crack cocaine, but this omission is not misleading because the affidavit stated that O'Neal admitted Buchanan was his source only after the police told O'Neal they were convinced he was lying and confronted him with their belief that his source was Buchanan.[6]

Upon review of the transcript of the suppression hearing and other documents in the record, we do not find clear error in the Magistrate Judge's findings of fact regarding the misleading and omitted elements of Officer Knief's affidavit. It is obvious that, as the District Court stated, Officer Knief provided "false and inaccurate

---

[6]Buchanan argues that Officer Knief failed to discuss in his affidavit that two packages of crack cocaine were found. It is unclear from the record exactly which package or packages O'Neal admitted buying from Buchanan, and the Magistrate Judge did not make findings of fact regarding this issue. Assuming O'Neal admitted possessing only the crack cocaine found on his person and that other members of the group such as Washington may have possessed the second package, we still conclude that the affidavit establishes probable cause. Reliance on information from an informant such as Washington who cooperates to gain leniency or other benefits does not thereby undermine the probable cause determination especially when the information provided by the informant is at least partially corroborated, which is the case here. See Gladney, 48 F.3d at 315; United States v. Wold, 979 F.2d 632, 634-35 (8th Cir. 1992).

information" in his affidavit.[7]  Although Officer Knief's conduct was at best extremely careless and at worst reprehensible, our Franks analysis does not end there.  Instead, under Franks we must examine the affidavit as rewritten, with the misleading statements subtracted and the omitted facts added, to determine whether there was a substantial basis for finding probable cause.

"'Probable cause' to issue a search warrant exists when an affidavit sets forth sufficient facts to justify a prudent person in the belief that contraband will be found in a particular place."  United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986), quoted in Clapp, 46 F.3d at 801; see also Illinois v. Gates, 462 U.S. 213, 238 (1983).  Courts should apply a common-sense approach and, considering all the relevant circumstances, determine whether probable cause exists.  See Gates, 462 U.S. at 238; Clapp, 46 F.3d at 801.

The rewritten affidavit shows the police were informed that individuals were selling crack cocaine in the parking lot at 302 Commercial Street in Waterloo, Iowa. O'Neal was arrested with a package of crack cocaine on his person and another package of crack cocaine was found near the spot where he alone was standing. Washington unequivocally and voluntarily stated that O'Neal had bought the crack cocaine from Buchanan at Buchanan's residence earlier that evening.  Although O'Neal was reluctant to admit he bought the crack cocaine from Buchanan, he did admit it when the police confronted him with Buchanan's name and thereby corroborated the information given by Washington.  O'Neal had reason to protect Buchanan, whom he considered a member of his family, and in fact identified two or three other persons as his source before admitting that his source was Buchanan.  His description of Buchanan's residence and its location and his statement that Buchanan lived with his

_____

[7]Buchanan argues that the facts of this case are similar in their egregiousness to the facts of United States v. Madrid, 152 F.3d 1034 (8th Cir. 1998).  Madrid, wherein the Court refused to extend the inevitable discovery doctrine to cover warrantless searches when exigent circumstances do not exist, is inapposite to this Franks case.

girlfriend were consistent with Washington's information. Through independent investigation of utility records and police incident reports, the police corroborated that Buchanan lived at 1023 West Mullan Avenue, the address O'Neal had identified as being Buchanan's address.

We agree with the Magistrate Judge's expression of concern regarding the extent to which Officer Knief's affidavit had to be rewritten to make it truthful and not misleading. We conclude, however, as did the Magistrate Judge and the District Court, that the rewritten affidavit, which accurately reflects the information the police had when Officer Knief prepared the application for the search warrant, is sufficient to establish probable cause for the warrant's issuance. We therefore affirm the order of the District Court denying Buchanan's motion to suppress evidence seized pursuant to the search warrant.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.