Terry Lynn STEPHENSON *v.* STATE of Arkansas

CA CR 00-124                                      29 S.W.3d 744

Court of Appeals of Arkansas
Division III
Opinion delivered October 25, 2000

*Lynn F. Plemmons*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

JOHN F. STROUD, JR., Judge. Terry Lynn Stephenson was convicted in a bench trial of manufacturing a controlled substance, possession of a controlled substance, and possession of drug paraphernalia. On appeal she contends that the trial court erred in denying her motion to suppress evidence seized pursuant to a search warrant. We disagree and affirm.

When reviewing a trial court's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances; we view the evidence in the light most favorable to the appellee and reverse only if the ruling is clearly erroneous or against the preponderance of the evidence. *Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999). We apply the totality-of-the-circumstances test in determining whether the magistrate had a substantial basis for concluding that probable cause existed to issue the warrant. *Id.*

On November 11, 1997, Detective Jeff Anderson of the Conway Police Department's narcotics division swore out an affidavit for a search warrant. The warrant listed seven facts, which we now set forth in abbreviated form:

> 1) On October 23, 1997, the Conway Regional Drug Task Force was advised by Faulkner County detective Jim Wooley that Terry Lynn [Stephenson], who is associated with Gerald Pate of 89 Gap Road, drove Pate's blue Chevrolet Camero to the John Deere

business in Damascus and purchased "all the ether they had, which was sixteen cans of starting fluid...."

2) On October 25, 1997, a white female later identified to be [Stephenson] purchased twenty-four cans of starting fluid from Duncan Outdoor in Conway.

3) On November 8, 1997, driving her own gray Buick Skylark, [Stephenson] purchased thirty-six cans of starting fluid from Duncan Outdoor in Conway. She commented to an employee that she liked the John Deere fluid "because it is 80% ether."

4) On November 11, 1997, Investigator Travis Thorn and I went to the residence at 89 Gap View Road, where we could smell a very strong odor of chemicals. The vehicles mentioned above were at the residence.

5) Pate was convicted of first degree murder in 1959 and served twenty-six years. He also "has priors to theft and burglary and also car theft."

6) [Stephenson] "has prior for the Uniform Controlled Substance Act" in Conway and in Perry County, and also "has prior for theft of property."

7 ) "Due to my experience and training, these chemicals are used to manufacture methamphetamines."

The circuit judge issued a search warrant for the residence at 89 Gap Road on the basis of Anderson's affidavit. Execution of the warrant later the same day by the Conway Police Department's SWAT team resulted in seizure of items that led to the drug charges against appellant. Appellant filed a pretrial motion to suppress items seized pursuant to the warrant. After a hearing, the motion was denied.

Appellant contends on appeal, as she did below, that the last four of the affidavit's listed facts were either wholly false or intentionally misleading, and that exculpatory facts known to Anderson before he submitted the affidavit were omitted from it. Appellant points to the statement in Fact 4 of the affidavit that Anderson and another officer "could smell a very strong odor of chemicals" at the residence; she contrasts the statement with Anderson's testimony at the suppression hearing that he smelled only ether. Appellant notes the statements in Fact 5 that Gerald Pate had been convicted of

murder and had "priors" for theft, burglary and car theft; she asserts that a murder conviction has no bearing on a person's propensity to manufacture a controlled substance, and she notes Anderson's testimony at the hearing that he knew that Pate had not been convicted of theft or burglary. Regarding the statement in Fact 6 that appellant had "prior for the Uniform Controlled Substance Act," she points to Anderson's acknowledgment at the hearing that the State actually had dropped previous controlled-substance charges against her and that she had no convictions. Finally, regarding Fact 7's reference to "chemicals" used in manufacturing methamphetamine, she cites Anderson's later testimony that only starting fluid had been connected to the residence.

■ ■ Our supreme court has explained the analysis to be used in determining whether false material, misleading information, or omissions render an affidavit in support of a search warrant fatally defective:

> Since *Franks* [*v. Delaware*, 438 U.S. 154 (1978),] was handed down in 1978, courts have consistently held that a warrant should be invalidated if a defendant shows by a preponderance of evidence: 1) that the affiant made a false statement knowingly and intentionally, or with reckless disregard for the truth, *and* 2) that with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause. *United States v. Clapp*, 46 F.3d 795 (8th Cir. 1995); *Pyle v. State*, 314 Ark. 165, 862 S.W.2d 823 (1993). Similarly, when an officer omits facts from an affidavit, the evidence will be suppressed if the defendant establishes by a preponderance of the evidence that: 1) the officer omitted facts knowingly and intentionally, or with reckless disregard, *and* 2) the affidavit, if supplemented with the omitted information, is insufficient to establish probable cause. *United States v. Buchanan*, 167 F.3d 1207 (8th Cir. 1999); *Pyle, supra*.

*State v. Rufus*, 338 Ark. 305, 314-15, 993 S.W.2d 490, 495-6 (1999).

■ Here, under the first step of *Franks*, we do not find that the affiant's reference to "chemicals" coupled with later testimony that he meant only ether and starting fluid rises to a showing that the officer made a false statement knowingly and intentionally, or with reckless disregard for the truth. We do find, however, that the affiant's use of the term "prior" without clarification that the references were only to arrests and that the charges were later dropped,

was on its own a false statement made with reckless disregard for the truth, or that omission of the clarifying information amounted to reckless disregard. The stated facts in the affidavit at the least would have led the magistrate to believe that Pate stood convicted of theft and burglary, and that appellant had been convicted under the Uniform Controlled Substances Act. Thus, we discard these parts of the affidavit.

Therefore, under the second prong of *Franks*, we must decide whether the remaining contents of the affidavit were sufficient to establish probable cause. This leaves the affiant's stated facts that appellant purchased seventy-six cans of starting fluid in a short period of time, once buying a business's entire supply and once remarking that she preferred the brand with a high ether content; and that the affiant and another investigator smelled at appellant's residence the strong chemical odor of ether, which in their experience with law enforcement, they knew to be associated with the manufacturing of methamphetamine. Although Pate's convictions for murder and car theft also remain, we do not view these as pertinent evidence establishing probable cause to search for items related to drug charges.

■■ The question before us is whether the remaining pertinent facts, as set forth above, were enough to establish probable cause. Our supreme court has stated that the smell of ether alone is not enough to justify a nighttime search. *See Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999). Here the search took place in the afternoon, and the smell of ether was not the only piece of evidence before the circuit judge. We find that probable cause to issue the warrant was shown by the affiant's stated facts that appellant purchased an unusual amount of starter fluid, that she stated a preference for a brand with a high ether content, and that the smell of ether emanated from her residence.

Affirmed.

KOONCE and GRIFFEN, JJ., agree.